IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-82643-TJM |
| | ) | |
| SPORTSSTUFF, INC., | ) | CH. 11 |
| | ) | |
| Debtor(s). | ) | |

MEMORANDUM

Hearings were held in Omaha, Nebraska, on April 6, 2009, on Filing #229, Motion to Approve Compromise Between SportsStuff, Inc., and Interstate Fire & Casualty Company, filed by SportsStuff, Inc., and several objections; and on May 4, 2009, on Filing #265, Motion for Approval of Compromise with Evanston Insurance Company, filed by SportsStuff, Inc., and several objections, and Filing #266, Motion for Approval of Compromise with Axis Surplus Insurance Company, filed by SportsStuff, Inc., and several objections.

Appearances:
- Robert Ginn and Theresa Koller for the Debtor;
- James Cavanagh and David Bernsen for Personal Injury Claimants;
- Donald Swanson and James Cann for Axis Surplus Insurance Company;
- Emmett Childers for Rhonda Brown;
- Bethany Culp and Richard Garden for Interstate Fire and Casualty Company;
- Sam King for Craig Watson;
- David Koukol and Mark Young for James Feinauer;
- Robert Lepp and Richard Myers for Evanston Insurance Company;
- Daniel Cray, Jenna Taub and John Palumbo for Cramer, Inc.;
- Mark Oliver for Texas Mastercraft Ltd.;
- Martin Pelster for Dri-Port Marine, Inc.;
- Robert Bothe and Doug Quinn for the Committee of Unsecured Creditors;
- Wirt Brock and Frank Schepers for Robert Dunnam III;
- Michael Whaley for Overton's, Inc.;
- Charles Hendricks, Andy Talbert and Jill Gettman for Walmart Stores Inc.;
- Donna Biggins for Donna Landry;
- Elliott Olsen for Personal Injury Claimants;
- Jessica Fakhimi for Oasis Motor Sport;
- Tom Szyperski for Casey Karabin;
- T. Randall Wright, Brandon Tomjack and Marla Kanemitsu for Land 'N' Sea Distribution Systems, Inc.;
- Jerry Jensen for the U.S. Trustee;
- Nicholas Kaufman as Special Litigation Counsel for the Debtor; and
- Bill Carey for Gerald Gorman.

This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(O).

Debtor is a corporation that designs and distributes its own line of water inflatables and towable water toys. It sells through distributors nationwide. Debtor asserts that it owns more than

250 product design patents. In the two years prior to filing its bankruptcy petition in December 2007, the Debtor, as defendant, became the subject of numerous state, federal and foreign personal injury, property damage, and wrongful death actions, as well as numerous additional personal and property injury claims that have not yet resulted in litigation. The majority of the claims and lawsuits arose in connection with the sale of one particular product line, the "Wego Kite Tube," which is an inflatable device intended to be pulled behind a power boat.

Shortly after filing this Chapter 11 petition, the Debtor filed an adversary proceeding, SportsStuff, Inc., v. Rosalyne Attali-In, et al., in the United States Bankruptcy Court for the District of Nebraska at Adversary Proceeding No. A08-8009-TJM. Defendants include all current and future claimants who have or may assert personal injury, property damage, or wrongful death claims against the Debtor's property or against the Debtor's insurers, co-insureds, or indemnitees for injuries allegedly caused by or related to the use of Debtor's products. In addition, all three of Debtor's product liability insurance carriers are parties. The adversary proceeding complaint requests a declaratory judgment that the Debtor's general and excess liability insurance policies, and the proceeds of such policies, are property of the bankruptcy estate and that the automatic stay prohibits commencing or continuing any action against Debtor or Debtor's property for personal injury or wrongful death or any other claims for loss arising from or relating to products sold by the Debtor against any entity that issued general or excess liability insurance policies under which Debtor is a beneficiary.

The complaint also requests a declaratory judgment that such actions are also prohibited against co-insureds under the policies and those entities that have contractual indemnification agreements with the Debtor.

Finally, the complaint requests a preliminary injunction staying, enjoining, and prohibiting commencement or continuation of such actions.

On April 28, 2008, at the request of the Debtor, this court issued a preliminary injunction enjoining all parties from continuing or commencing any litigation against SportsStuff or SportsStuff's co-insureds, indemnitees, and insurance companies, including Interstate Fire and Casualty Company ("IFCC"), Evanston Insurance Company ("Evanston"), and Axis Surplus Insurance Company ("Axis").  As part of the issuance of the preliminary injunction, the court tentatively found that the insurance policies are property of the bankruptcy estate.

The amount of liability insurance issued by the companies referred to above is, most likely, insufficient to enable the Debtor to resolve all of the litigation and pending and unknown claims. Therefore, representatives of the Debtor entered into negotiation with each of the insurance companies and have reached settlements with each company. The settlements provide that the policies and proceeds are property of the bankruptcy estate and that each of the insurance carriers will pay the total remaining proceeds of the policies to SportsStuff to be deposited in separate identifiable accounts to be used for distribution to claimants through a confirmed Chapter 11 plan. The payments shall be made in consideration for a full release of any and all liability to SportsStuff, current and future claimants, co-insureds, or indemnitees for any and all injuries allegedly caused by or related to the use of the Debtor's products. The approval of the compromises will also relieve the insurance companies from any obligation to provide defense costs to the Debtor, co-insureds, or contractual indemnitees because the limits of the policies are being contributed.

The settlement documents were served upon all parties to the adversary proceeding along with a motion to approve the compromises represented by the settlements.

Initially, a number of the personal injury claimants objected to the settlements because the settlement agreements were not clear with regard to their rights against the proceeds. However, after counsel for the Debtor agreed to certain language to be placed in a proposed order approving the compromises, the personal injury claimants acquiesced and generally accepted the terms of the compromise.

Certain vendors, pre-petition, had entered into written contractual indemnification agreements with SportsStuff assuring them that SportsStuff would hold them harmless from any claims and provide defense costs. Those vendors, identified as "additionally insured or co-insured" under the IFCC policy suggest that they have equal rights to the insurance protection as SportsStuff does and to allow the insurance carriers and SportsStuff to enter into an agreement that will protect the interest of SportsStuff but leave the co-insured vendors without coverage or defense costs is not appropriate and should not be allowed by the court. Other vendors, who lack contractual arrangements but who are recognized as additional insureds simply by the terms of the insurance policies issued by Evanston and Axis, make the same argument.

The standard for evaluation of a settlement is whether the settlement is fair and equitable and in the best interests of the bankruptcy estate. Tri-State Fin'l, LLC v. Lovald, 525 F.3d 649, 654 (8th Cir. 2008). Compromise is an art, not a science. Nangle v. Surratt-States (In re Nangle), 288 B.R. 213, 220 (B.A.P. 8th Cir. 2003). There is no "best compromise," only a range of reasonable compromises, and as long as the compromise before the court falls within that range, it may be approved. Velde v. First Int'l Bank & Trust (In re Y-Knot Constr., Inc.), 369 B.R. 405, 408 (B.A.P. 8th Cir. 2007). In determining whether a settlement is fair, reasonable, and adequate, the court must consider all factors bearing on the fairness of the settlement, including the probability of success in the litigation; the difficulties, if any, to be encountered in collection; the complexity of the litigation involved and the expense, inconvenience, and delay associated with it; and the paramount interest of the creditors and a proper deference to their reasonable views. Tri-State Fin'l, supra; Drexel Burnham Lambert, Inc., v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.), 730 F.2d 1128, 1135 (8th Cir. 1984) (quoting Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929)).

Notwithstanding the objecting vendors' legal position that the insurance carriers and the Debtor cannot enter into such an arrangement and deprive the objectors of various rights to insurance and defense costs, there is long-standing circuit court case law that such a procedure is appropriate in the context of a Chapter 11 case. The Second Circuit in MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89 (2nd Cir. 1988), found that any rights the vendors might have in Debtor's products liability policies were derivative of and inseparable from Debtor's own rights, so as to fall within the bankruptcy court's jurisdiction over property of Debtor's estate, and held that the bankruptcy court did not exceed its authority when, in approving settlement of Debtor's claims against products liability insurers, it enjoined suits against the insurers. The appellate court said the authority to issue the injunction was a corollary to the bankruptcy court's authority to dispose of assets free and clear of liens and to channel claims to the proceeds. 837 F.2d at 93. The principle of preserving the Debtor's estate for creditors is fundamental to bankruptcy law, and where an insurance settlement/injunction arrangement is essential to a workable reorganization, the bankruptcy court has the equitable power to approve the arrangement in order to preserve the integrity of the estate. Id. at 94.

In this case, proceeds of the insurance policies, approximately 6.3 million dollars in total, represent the major asset of this bankruptcy estate. The plan that is currently on file provides for a sale of Debtor's assets with the net proceeds – after certain deductions for administrative expenses – contributed to a trust, along with the insurance proceeds, for distribution to creditors.

No matter what the amount of the net proceeds of the asset sale, the insurance proceeds are to be reserved for the personal injury claimants.

The benefits to the claimants are clear. Approval of the compromises will provide cash to be used only to fund payments to the claimants and not to fund the administrative expenses of the debtor in possession.

The Debtor is subject to each and every one of the claims. Each vendor is subject to only a few of the individual claims. It is of significant benefit to the estate to have a fund available for distribution to the claimants. It is not of benefit to the estate to allow continuing litigation against the Debtor or the product liability carriers which will result in individual judgments or settlements continually reducing the potential amount of proceeds available to benefit the total group of claimants.

If the compromises are not approved, and a plan cannot be confirmed because of a lack of a funding mechanism, the case will be dismissed, lawsuits against the company and the vendors will proceed, with defense costs reducing the potential funds available to the claimants and, within a short period of time, the proceeds will be dissipated by the claims which first obtain judgments, to the detriment of all the other claims.

Each of the insurance policies has a $100,000 deductible for each claim. That is, if, outside of bankruptcy, a claim is settled or judgment is rendered against SportsStuff or the co-insureds or additional insureds, the insureds are liable for the first $100,000 of the judgment prior to the insurance company being required to make payment up to the limits of its liability. That contractual requirement alone could be devastating to the Debtor's ability to sustain an ongoing business. With the compromises, there is no deductible. The full amount of the proceeds are paid in and made available for distribution to the claimants through a confirmed plan.

The proposed compromises are fair, reasonable, and adequate. Each of the compromises represented by the settlements with the three insurance companies are approved. A separate order will be entered.

DATED:     May 28, 2009

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:

| | | |
|---|---|---|
| *Robert Ginn | David Koukol | Doug Quinn |
| *Theresa Koller | Mark Young | Wirt Brock |
| James Cavanagh | Robert Lepp | Frank Schepers |
| David Bernsen | Richard Myers | Michael Whaley |
| Donald Swanson | Daniel Cray | Charles Hendricks |
| James Cann | Jenna Taub | Andy Talbert |
| Emmett Childers | John Palumbo | Jill Gettman |
| Bethany Culp | Mark Oliver | Donna Biggins |
| Richard Garden | Martin Pelster | Elliott Olsen |

| | | |
|---|---|---|
| Sam King | Robert Bothe | Jessica Fakhimi |
| Tom Szyperski | T. Randall Wright | Brandon Tomjack |
| Marla Kanemitsu | Jerry Jensen | Nicholas Kaufman |
| Bill Carey | | |

*Movant is responsible for giving notice to other parties if required by rule or statute.