IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-82643-TJM |
| | ) | |
| SPORTSSTUFF, INC., | ) | CH. 11 |
| | ) | |
| Debtor(s). | ) | |

### ORDER

Hearing was held in Omaha, Nebraska, on September 17, 2010, regarding Fil. #905, Motion for Civil Contempt and for Sanction, filed by Interstate Fire and Casualty Insurance Company, and Fil. #925, Objection, filed by Wal-Mart Stores, Inc. Robert Ginn appeared for the debtor; Douglas Quinn appeared for the Creditors Committee; Charles Hendricks, Jill Gettman, Miguel Rivera, Bruce White and Clifton Jessup appeared for Wal-Mart Stores, Inc.; and Richard Garden, Jr., and Bethany Culp appeared for Interstate Fire and Casualty Insurance Company.

### FACTS

SportsStuff, Inc., filed a Chapter 11 petition on December 31, 2007. At that time, it was a defendant in numerous lawsuits brought by the representatives of injured or deceased individuals resulting from their purchase and use of products developed and sold by SportsStuff. SportsStuff had contracted for products liability insurance coverage from at least three insurance carriers and had "excess coverage" policies with one or more of those companies.

The filing of the bankruptcy petition, with notice to the various litigation plaintiffs and to known claimants who had not yet filed lawsuits, stayed various actions pending and anticipated against SportsStuff.

SportsStuff then filed an adversary proceeding naming the insurance companies, the plaintiffs in state and federal litigation, the known claimants, and known vendors of SportsStuff products, and requested in such adversary proceeding that the court determine that the insurance policies, both the general product liability policies and the excess policies, are property of the bankruptcy estate. In addition, the adversary proceeding requested injunctive relief against all current and future claimants from pursuing any proceeds of the insurance policies. The adversary proceeding is docketed at Adv. Proc. No. A08-8009 and was filed on January 31, 2008.

The complaint requested a declaratory judgment that the debtor's general and excess liability insurance policies and the proceeds thereof are property of the debtor's bankruptcy estate. It also requested a declaratory judgment that the automatic stay prohibits a continuation or commencement of (1) any actions or proceedings against any property in which the debtor has a legal, equitable, beneficial, contractual or other interest; and (2) any actions or proceedings which allege personal injury, wrongful death, or any other claims for loss arising from or relating to any of the products sold by the debtor or any defect thereof, against:

      i.     any entities that issued general or excess liability Insurance Policies under which Debtor is a beneficiary including, without limitation, Evanston Insurance Company, Axis Surplus Insurance Company, and the Interstate Fire and Casualty Company ("Insurance Companies");

      ii.    any entities that are co-insureds under any of Debtor's Insurance Policies ("Co-Insureds"), or

      iii.    any entities that have contractual indemnification agreements with Debtor ("Indemnities"); and/or

C.    a preliminary injunction staying, enjoining and prohibiting the continuation or commencement of any actions or proceedings against: (1) any property in which Debtor has a legal, equitable, beneficial, contractual or other interest; and (2) Debtor's Insurance Companies, Co-Insureds, and/or Indemnitees for personal injury, property damage, wrongful death, or any other claims for loss allegedly arising from or related to any of Debtor's products or any defect thereof . . . .

Compl. at 2-3 (Fil. #1).

Paragraph 9 of the complaint stated:

    The Insurance Proceeds are finite and, in some cases, a wasting assets [sic] that inures to the benefit of Debtor's bankruptcy estate and Debtor's creditors. If the Insurance Proceeds are depleted by the defense costs, settlements, and judgments against Debtor's Insurance Companies, Co-Insureds, and Indemnitees, little or nothing will be left to distribute to the creditors of Debtor's estate. Rather, the first handful of plaintiffs to obtain large judgments against Debtor's Insurance Companies, Co-Insureds, and Indemnitees will reap the benefit of Debtor's Insurance Policies and Proceed [sic]. Such a result is in direct opposition to the primary purpose of the Bankruptcy Code, which is to provide a forum for the fair and equitable distribution of assets to similarly situated creditors.

Id. at 4.

On February 5, 2008, the debtor filed an amended complaint at filing number 6.

On April 11, 2008, the debtor filed a Motion for Declaratory Judgment and/or Preliminary Injunction, Shortened Resistance/Objection Deadline, and Request for Expedited Hearing (Fil. #55). That motion incorporates many of the provisions listed in the original complaint and amended complaint requesting declaratory and injunctive relief.

On April 28, 2008, the court entered an order making certain factual findings and granted preliminary relief, subject to further hearings (Fil. #79). That order made a finding that the "Debtor's Insurance Policies and Proceeds are property of the Debtor's bankruptcy estate." Id. at ¶ III. The order additionally stated:

    Pursuant to sections 105(a) and 362(a) of the Bankruptcy Code, all parties, including, without limitation, Defendants in this action, their agents, servants, employees, and counsel, are hereby stayed, restrained, and enjoined for a period of sixty (60) days from the date of this Order from continuing or commencing: (a) any actions or proceedings against any property in which Debtor has a legal, equitable, beneficial, contractual or other interest including, without limitation, Debtor's Insurance Policies or Proceeds; and (b) any actions or proceedings which allege

personal injury, wrongful death, or any other claims for loss arising from or relating to any of the products sold by Debtor or any defect thereof including without limitation, the lawsuit and actions listed on Exhibit "A" attached to and incorporated in this Order, against Debtor's Insurance Companies, Co-Insureds, or Indemnitees; provided, however, that nothing contained herein shall prohibit the commencement or continuation of actions against third parties which are not Co-Insureds or Indemnitees.

Id. at ¶ IV.

The order also tolled "statutes of limitations and statutes of repose that had not expired as of January 1, 2008, with respect to any claims against Debtor's Insurance Companies, Co-Insureds, or Indemnitees arising from or relating to any of the products sold by Debtor or any defect thereof . . . until sixty (60) days after the above[-]captioned adversary proceeding has been disposed of by final, non-appealable judgments, orders ,or decrees[.]" Id. at ¶ V. The order further provided that nothing contained in the order prohibited any party from seeking relief from the automatic stay of § 362(a) of the Bankruptcy Code or the terms of the order by filing an appropriate motion with the court. Id. at ¶ VII.

Finally, the order provided that any parties that took action which violated the order, who had not received notice of the adversary proceeding, shall, upon receiving actual notice of the injunction, "take all such actions necessary to comply with the Order, including the withdrawal of any claims asserted against Debtor's Insurance Companies, Co-Insureds, or Indemnitees arising from or relating to any of the products sold by the Debtor or any defect thereof[.]" Id. at ¶ VIII.

On June 26, 2008, after notice and hearing, the injunction was extended with a status hearing scheduled for September 22, 2008. After the September 22nd hearing, a text order was entered extending the injunction for ninety (90) days with a hearing to be held on January 5, 2009 (Fil. #230).

On January 8, 2009, following a hearing held on January 5, 2009, a text order was entered extending the injunction to March 16, 2009, with a hearing to be held on March 16, 2009 (Fil. #287). That hearing was rescheduled to March 17, 2009 (Fil. #300).

Following the hearing on March 17, 2009, an order was entered which, among other things, extended the injunction pending a hearing on objections to the disclosure statement (Fil. #320).

On May 20, 2009, the Official Committee of Unsecured Creditors filed a motion to modify injunction (Fil. #365). It requested an order allowing the injunction, except as it extended to the insurers, to be dissolved to permit pursuit of all co-defendants, third parties and the like, including vendors, additional insureds and indemnitees, save and except only for the insurers, as to which the injunction order would remain in full force and effect. A hearing was held on that motion on June 2, 2009, and, on June 8, 2009, an order was entered (Fil. #393). The order recited that the insurance companies objected to the request for modification because they had entered into settlements with the debtor which had been approved by the court, subject to the entry of a final order. Those settlements provided for the insurance companies to contribute to the debtor the full amount of the policy proceeds, thereby exhausting the proceeds and exonerating them from any further obligation to the debtor, the vendors, or any other parties concerning providing a defense or defense costs. Their concern was that if the injunction was dissolved prior to the entry of a final order concerning the settlements, even with an order that prohibits any party from taking actions

against or making claims upon the insurance companies, such actions or claims would still be made, thereby reducing the proceeds and putting the insurance companies in jeopardy of violating the terms of the settlements.

The vendors objected because a certain portion of the motion gave them a very short period of time to settle cases brought against them before the injunction would be dissolved and they would be subject to the commencement or continuation of litigation.

In response to the objections of the insurance companies and the vendors, the court deferred ruling on the motion pending entry of a final order regarding the approved settlements.

On August 27, 2009, the Official Committee of Unsecured Creditors filed an amended and renewed motion to modify injunction (Fil. #423). It asserted that the settlements had been finally approved by the court and requested that the injunction, except as it extends to the insurers, be dissolved to permit pursuit of all co-defendants, third parties and the like, including vendors, additional insureds and indemnitees, save and except only for the insurers, as to which the injunction order should remain in full force and effect. In addition, it requested that the court specifically enjoin any attempts by any co-defendant, third party, and the like to make demand upon or in any way seek recovery from the insurers for defense, costs of defense, or the like.

Many of the vendors objected. The specific objection filed by Wal-Mart Stores is found at filing number 440 in the adversary proceeding. It is in the form of a joinder in an objection filed by vendor Land 'N' Sea (Fil. #439). In addition to the arguments made by Land 'N' Sea, Wal-Mart suggested,

> Additionally, if the Court lifts the injunction before the Bankruptcy Appellate Panel has an opportunity to hear Wal-Mart's appeal, Wal-Mart will be prejudiced as it will be forced to incur additional defense costs in the various litigation in which it is involved in prior to the Bankruptcy Appellate Panel's determination of the issues which will be presented on appeal.

Joinder at ¶ 7 (Fil. #440).

On September 17, 2009, an order (Fil. #448) was entered concerning the amended and renewed motion to modify the injunction. The order stated, among other things:

> I agree with the position of the counsel for the injured parties. The vendors have been protected from litigation for well more than a year and it is now clear that even if a plan gets confirmed using all of the insurance proceeds and any other funds available to the debtor, it is likely that not all of the injured parties will be fully compensated. Therefore, they should be permitted to pursue vendors and other parties, other than the insurance carriers, to obtain relief.
> IT IS ORDERED that the injunction, Filing #79, except as it extends to the insurers, that is, Interstate Fire and Casualty Company, Evanston Insurance Company, and Axis Surplus Insurance Company, is dissolved and the personal injury claimants are permitted to pursue all co-defendants, third parties, vendors, additional insureds and indemnities [sic], save and except only for the insurers, as to which the injunction order shall remain in full force and effect. In addition, the injunction remains in full force enjoining any attempts by any co-defendant, third parties, vendors, or others to make demand upon or in any way seek recovery from

the insurers for defense or cost of defense.

Order at 2-3 (Fil. #448).

That order, partially dissolving the injunction but leaving it in effect with regard to the insurers, was not appealed by Wal-Mart or any other vendor.

The partial dissolution of the injunction (Fil. #448) was entered several months after the bankruptcy court approved settlements between the insurers and SportsStuff with regard to the proceeds of the insurance policies. The settlement agreements with each of the insurers are similar. They provide that the insurance companies would pay into a trust account of counsel for the debtor all of the general product liability policy proceeds. The debtor would be free to use those proceeds for distribution to tort claimants and/or other claimants, and the insurers would be relieved of all duties to defend or pay defense costs for the debtor, any co-insureds or indemnitees. Because the policies were wasting policies, and the insurers had no liability once all the policy proceeds had been exhausted, the settlement agreements anticipated that the payment into the possession of the debtor of the insurance proceeds would be the equivalent of a full distribution and exhaustion of the policy proceeds. On that basis, the insurers would have no further liability, just as they would have had no further liability had the policy proceeds been used either for defense or settlement with some or all of the claimants. Those settlement approvals were appealed by various vendors to the Bankruptcy Appellate Panel of the Eighth Circuit.

On June 3, 2010, the Bankruptcy Appellate Panel reversed the bankruptcy court's settlement agreements with the insurers. The opinion is found at filing number 827 in the bankruptcy case, Case No. BK07-82643, and at filing number 515 in the adversary proceeding, Adv. Proc. No. A08-8009.

The decision of the Bankruptcy Appellate Panel regarding the reversal of the approval of the insurance settlements has now been appealed to the Eighth Circuit Court of Appeals.

The Bankruptcy Appellate Panel dealt with the issues that had actually been appealed, that is, the approval of the settlements and the impact of the settlements on the rights of Wal-Mart and the other vendors to defense costs and indemnification. The Bankruptcy Appellate Panel decision did not deal with the injunction still in effect in the adversary proceeding.

Prior to the SportsStuff bankruptcy petition being filed, David Watson, as next friend of John Watson, a minor, filed a lawsuit in state court in Michigan concerning injuries received by the use of one of the products sold by SportsStuff. Apparently, the distributor or retailer of the product that allegedly caused the injury was one of the Wal-Mart entities. Prior to the bankruptcy being filed, the Wal-Mart entity, as well as others, were sued. Wal-Mart then contacted officials at SportsStuff who referred it to the insurer, Interstate Fire and Casualty Company ("IFCC"). IFCC notified Wal-Mart that it would proffer a defense, and employed the services of an attorney in Michigan, who entered an appearance and filed an answer. Then the bankruptcy petition was filed and the adversary proceeding was filed. The injunction in the adversary proceeding went into effect and counsel for Watson was notified. The Michigan litigation was thereafter stayed until the bankruptcy court dissolved the injunction which had protected Wal-Mart in that litigation. On March 17, 2010, Watson filed a motion for limited relief from the automatic stay in the SportsStuff bankruptcy case. The motion asserted that it appeared Watson's injuries would be covered, not only by the personal injury trust fund established by SportsStuff's reorganization plan, but also by an umbrella insurance policy against which Watson could claim (Interstate Fire and Casualty Policy No. PFX1003010) ("Umbrella

Policy").

Watson requested relief from the stay solely for the limited purpose of pursuing any recovery for which he may be entitled pursuant to the Umbrella Policy. The laws of the state of Michigan require Watson to name SportsStuff as a nominal defendant for those purposes. The limited motion for relief was granted (Fil. #816 in Case No. BK07-82643). That order was dated May 14, 2010, a little more than two weeks prior to the Bankruptcy Appellate Panel decision reversing the settlement agreements with the insurance companies.

On July 12, 2010, IFCC moved the Court for an order terminating the automatic stay as to IFCC and directing the Debtor to remit to IFCC Primary Insurance Proceeds previously paid to the Debtor (Fil. #846 in Case No. BK07-82643). The motion suggested that since the Bankruptcy Appellate Panel reversed the approval of the settlement between the insurance companies and the debtors, claims are being asserted under the IFCC excess policy when the IFCC primary policy has not been exhausted as contemplated by the settlement. IFCC would like to convene a mediation with all non-Wego Kite Tube claimants whose claims may fall within the IFCC insurance policies. It further requests relief from the automatic stay to take such action as it deems necessary or appropriate to obtain the settlement amount, to exhaust the coverage under the IFCC primary policy and, upon exhaustion of the coverage of the IFCC primary policy, to exhaust the coverage under the IFCC excess policy. Finally, IFCC requested that the court order and direct the debtor to immediately pay to IFCC the settlement amount together with all accrued interest thereon.

The Official Committee of Unsecured Creditors objected to IFCC's motion for relief (Fil. #863). The committee's objection stated that the decision of the Bankruptcy Appellate Panel had been appealed to the Eighth Circuit Court of Appeals and asserted that the return of the funds to the IFCC would result in possible disbursement of the funds in a haphazard or first come, first served basis, to the detriment of the creditor body as a whole. The committee had no objection to granting relief from the stay to the extent that IFCC proposes to deal with the excess policy and seek mediation with regard to the limited number of claimants who have potential claims against such excess policy.

Wal-Mart Stores, Inc., filed a limited objection to the motion for relief (Fil. #866). The objection suggests that in its motion, IFCC appears to be asking the court to construe terms of its policies as those terms bear on IFCC's obligations to its insureds under its policies. Additionally, the objection states "IFCC appears, in the Motion, to be asking for a declaration that one or more of its policies has been, or is, somehow exhausted." Ltd. Obj. at § 3. In summary, the Wal-Mart objection is to any ruling from the court which interprets or declares any rights under IFCC's policies. Wal-Mart did not object to the request by IFCC to be relieved from the automatic stay and permitted to engage in mediation with those parties who may have claims with regard to the excess policy.

The debtor objected to the motion on the grounds that IFCC had not demonstrated "cause" sufficient to warrant relief from the automatic stay or relief from the injunction entered by this court in Adv. Proc. No. A08-8009 (Fil. #867).

Several other vendors joined in the objection filed by Wal-Mart (Fil. #869).

An order was entered which granted the request of IFCC to proceed to mediation and deal with the excess policy, but denied without prejudice that portion of the motion which requested the turnover of policy proceeds because of the pending appeal to the Eighth Circuit Court of Appeals

(Fil. #920).

On August 26, 2010, IFCC filed a motion for civil contempt and for sanctions against Wal-Mart (Fil. #905). The motion alleges that the bankruptcy court determined in the adversary proceeding, Adv. Proc. No. A08-8009, that the insurance policies issued by IFCC to SportsStuff are property of the bankruptcy estate and such determination was not reversed upon appeal by the Bankruptcy Appellate Panel. In addition, a preliminary injunction entered in the adversary proceeding stays any action or proceeding against the debtor's insurance policies or the debtor's insurers (Fil. #79 in Adv. Proc. No. A08-8009). That injunction, with regard to the insurance companies, has never been terminated.

The motion then describes the Watson Michigan litigation referred to above and informs that, as of the time of the motion, Wal-Mart had removed the Watson action to the United States District Court for the Eastern District of Michigan, Southern Division.

The motion describes actions by Wal-Mart following the June 3, 2010, order from the Bankruptcy Appellate Panel. It alleges that Wal-Mart renewed its demand that IFCC provide a defense in the Watson action. After IFCC's counsel informed Wal-Mart's counsel that actions against IFCC and the claims against the policies were subject to the automatic stay and the injunction, Wal-Mart alleged that IFCC's refusal to provide a defense in the Watson action was a breach of its obligations under the IFCC primary policy and constituted bad faith.

On August 11, 2010, after IFCC filed the motion for relief from the automatic stay to obtain the policy proceeds from the debtor for appropriate administration and distribution, Wal-Mart filed a third-party complaint and request for injunctive relief and jury demand in the Watson action naming IFCC as a third-party defendant and asserting various rights with respect to the policies.

On August 13, 2010, Wal-Mart filed an emergency motion for preliminary injunctive relief in the Watson action. The motion was filed specifically to prevent IFCC from attempts to mediate claims against the excess policy.

IFCC requests an order under Rule 9020 of the Federal Rules of Bankruptcy Procedure holding Wal-Mart in civil contempt, determining damages, costs, attorney's fees and punitive damages and granting such further relief as may be just and equitable.

After the originally scheduled hearing on the motion was continued at Wal-Mart's request, Wal-Mart filed its objection to the motion for contempt (Fil. #925). In the objection, Wal-Mart claims that the injunction, rather than precluding actions against the insurers, actually permits and authorizes bringing such actions against "third parties" such as IFCC. Wal-Mart, in its objection, also suggests that the terms and validity of the injunction are ambiguous "at best" with regard to IFCC's claim that Wal-Mart has also violated the automatic stay by attempting to obtain the policy or control over the excess policy by virtue of the attempt to obtain an injunction in the Michigan litigation. Wal-Mart asserts it did not seek to obtain the insurance policy proceeds and only requested that IFCC, not the debtor, be enjoined from taking certain actions.

## **CONCLUSIONS OF LAW AND DISCUSSION**

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). It arises in the Chapter 11 case, under Title 11 of the United States Code, as a result of the court entering an injunction in an adversary proceeding, the intent of which was to protect the debtor's insurance companies from

litigation initiated by third-party claimants or vendors, whether co-insureds or indemnitees, during the pendency of the Chapter 11 case, at least until confirmation of a plan.

In order for a court to find civil contempt, the movant must prove that the offending party violated a specific order of which he or she was aware. Both elements must be established by clear and convincing evidence. Koehler v. Grant, 213 B.R. 567, 570 (B.A.P. 8th Cir. 1997). Willfulness is not an element of a civil contempt claim. Id. at n.8. Under the "clear and convincing" standard,

> the evidence must "place in the ultimate factfinder an abiding conviction that the truth of [the proponent's] factual contentions are highly probable." Colorado v. New Mexico, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984) (quotation omitted). The evidence must be "'so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261, 285 n.11, 110 S. Ct. 2841, 111 L. Ed. 2d 224 (1990) (quoting In re Jobes, 108 N.J. 394, 529 A.2d 434, 441 (1987)).

In re Kurtzahn, 337 B.R. 356, 366 (Bankr. D. Minn. 2006); see also Cornell v. Nix, 119 F.3d 1329, 1334-35 (8th Cir. 1997) (same)).

The "clear and convincing" standard of proof is an intermediate standard, Cruzan, 497 U.S. at 282, higher than "preponderance of the evidence" but not as high as "beyond a reasonable doubt." Travelhost, Inc. v. Blandford, 68 F.3d 958, 961 (5th Cir. 1995).

The injunction originally entered at filing number 79 has been continued a number of times and has never been terminated. The Bankruptcy Appellate Panel decision says nothing about this court lacking jurisdiction to enter such an injunction in the adversary proceeding. The Bankruptcy Appellate Panel decision says nothing about the court making an error when it determined that the insurance policies are property of the bankruptcy estate even though it did comment that the vendors' contractual rights to defense costs and indemnification were property of the vendors and not property of the bankruptcy estate.

The Bankruptcy Appellate Panel decision does say that this court did not have jurisdiction to eliminate the vendors' contractual rights nor did it have jurisdiction to eliminate the vendors' right to bring a bad faith claim against the insurer if it believes that the settlement was improper. The Bankruptcy Appellate Panel specifically stated on page 14 of its opinion, "The Settlement Injunction denies the Vendors that right."

Wal-Mart claimed that its third-party complaint in Michigan deals only with its right to bring a bad faith claim as supported by the Bankruptcy Appellate Panel's decision. However, it is clear from Wal-Mart's third-party complaint and request for injunctive relief, and from the correspondence between Wal-Mart and IFCC prior to bringing the third-party complaint, that Wal-Mart, at least partially, is looking for control over the excess policy and for defense costs from the underlying general products liability policy. Wal-Mart was aware of the motion by IFCC requesting the return of the insurance proceeds so it could use the proceeds to provide defense costs and pay settlements and potential judgements against co-insureds, such as Wal-Mart. It was also aware that this court declined to release the funds for such purposes.

In addition, Wal-Mart has simply ignored the fact that there are two injunctions in this case. The settlement injunction was dealt with and possibly dissolved by the Bankruptcy Appellate

Panel's decision that this court did not have jurisdiction to enter such settlement injunction. However, the injunction initially entered at filing number 79, and continued thereafter, is still in effect. Even when the creditors' committee moved for a dissolution of the injunction with regard to all parties but for insurance companies, and Wal-Mart objected, it did not appeal this court's decision to partially dissolve the injunction which affected Wal-Mart adversely. The injunction was clear in filing number 79 and remained clear throughout the pendency of this case, including in the language of the order dissolving the injunction as to all parties but the insurance companies. That order (Fil. #448) specifically states:

> IT IS ORDERED that the injunction, Filing #79, except as it extends to the insurers, that is, Interstate Fire and Casualty Company, Evanston Insurance Company, and Axis Surplus Insurance Company, is dissolved and the personal injury claimants are permitted to pursue all co-defendants, third parties, vendors, additional insureds and indemnities [sic], save and except only for the insurers, as to which the injunction order shall remain in full force and effect. In addition, the injunction remains in full force enjoining any attempts by any co-defendant, third parties, vendors or others to make demand upon or in any way seek recovery from the insurers for defense or cost of defense.

The original injunction (Fil. #79) had a relief valve. If any enjoined party felt the need for taking action which was prohibited by the injunction, that party was permitted to file a motion for relief from the automatic stay or a motion for relief from the injunction. Wal-Mart has never requested such relief.

I find, based upon the plain language of the injunction as originally entered and as continued in the Order of September 17, 2009 (Fil. #448), the actions by Wal-Mart following the Bankruptcy Appellate Panel's decision with regard to demands on IFCC, and on the language of the third-party complaint and request for injunctive relief, that Wal-Mart has violated the injunction and should be and hereby is found in contempt of this court, with appropriate sanctions to be imposed after an evidentiary hearing.

This is not a final appealable order. The Clerk of the Bankruptcy Court shall schedule a hearing at which IFCC may present evidence of its actual damages and attorney fees incurred as a result of the contemptuous action by Wal-Mart.

DATED:    October 8, 2010

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
| | | |
|---|---|---|
| Robert Ginn | Miguel Rivera | *Bethany Culp |
| Douglas Quinn | Bruce White | |
| Charles Hendricks | Clifton Jessup | |
| Jill Gettman | *Richard Garden, Jr. | |

*Movant is responsible for giving notice to other parties if required by rule or statute.