IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-82643-TJM |
| | ) | |
| SPORTSSTUFF, INC., | ) | CH. 11 |
| | ) | |
| Debtor(s). | ) | |

ORDER

Hearing was held in Omaha, Nebraska, on July 2, 2012, regarding Fil. #1129, Final Application for Allowance of Attorney Fees and Reimbursement of Expenses, filed by Husch Blackwell, LLP, counsel for the debtor, and Fil. #1134, Joint Objection, filed by the individual tort claimant creditors. Robert V. Ginn appeared for the applicant, Jerry L. Jensen appeared for the U.S. Trustee, and Christine L. Stetson and Ryan Osterholm appeared for the personal injury claimants.

Timeliness

The personal injury claimants complain that, while court-approved procedures contemplate that interim fee applications would be filed every 120 days, 894 days elapsed since the previous application was filed. Husch Blackwell admits this, with Mr. Ginn explaining that he and counsel for the official committee of unsecured creditors tacitly agreed that interim fee applications would no longer be filed and all compensation requests would be held and incorporated in the final application. Mr. Ginn says he continued to send monthly billing statements to all parties who had requested notice, and in December 2011 began sending the underlying billing information as well. Although additional interim fee applications may have alerted the objectors at an earlier date to the issues discussed below, they did receive the monthly statements.

Hourly Rates

The tort claimants also complain about the hourly rates charged by some of the Husch Blackwell attorneys, particularly the $525 charged by Jason Reschly and the $390 charged by Howard Hahn. Both are tax experts and Mr. Reschly is a CPA. Mr. Hahn spent a total of 2.6 hours on the case, and Mr. Reschly spent .3 hours on the case, all in the first week of April 2011. Both partners supervised an associate who researched and wrote a memo on various tax issues concerning the structure of the trust for the personal injury claimants. The U.S. Trustee feels the hourly rates for all of the attorneys are reasonable, and after my review, I agree.

Post-confirmation Fees

The fee application contains more than $100,000 for work performed after the plan was confirmed. This work includes preparation of interim and final fee applications, preparation of the final report, obtaining and reviewing the debtor's operating reports, and researching the allowance of late-filed claims, at least some of which, Ms. Stetson argued, should have been done by counsel for the creditors' committee. Mr. Ginn responded that his firm had to be involved in evaluating the claims because the debtor had unique knowledge of those claims. He also pointed out that there was plenty of work to be done post-confirmation, including establishing the trust for the personal injury claimants, working out the settlements with the insurance companies and paying the vendors' defense costs, and getting the insurance proceeds deposited into the trust fund.

I find the post-confirmation work to be necessary and reasonable.

### Failure to File Operating Reports

The objecting parties argued that counsel should not be compensated for the debtor's failure to pay trustee fees and comply with reporting requirements. Mr. Ginn pointed out that those responsibilities were between the debtor and the U.S. Trustee and the firm did not get involved until receiving correspondence from the U.S. Trustee about the delinquencies. This objection is denied.

### Reasonableness

The objectors complained at the hearing that Husch Blackwell appears to have received $656,000 in fees since October 1, 2009, "according to the trust account statement attached as Schedule C to the fee application." I think she's referring to Schedule C attached to the debtor's application for final decree and final accounting (Fil. No. 1109). The $656,000 in Schedule C appears to be for the entire case. The list of disbursements from the account attached to Schedule C show more than $700,000 going to Husch Blackwell since January 2008, however.

The final fee application states that Husch Blackwell has earned $543,133.85 in fees from October 1, 2009, through April 21, 2012, and has been paid $534,159.85, leaving a balance of $8,974. As the objecting parties point out, that $8,900 is considerably less than the 20% hold-back contemplated in the approved fee procedure. Mr. Ginn also stated at the hearing that his firm is owed $84,000 for post-confirmation work that he does not expect to be paid due to lack of funds. It is difficult to tell where that number comes from. The plan was confirmed in March 2011 and the billing statements since then total considerably more than $84,000, so it is unclear to me how that figure was calculated.

Ms. Stetson also argued that the creditors had no idea how quickly the funds in the trust account were disappearing. Mr. Ginn said he started providing a monthly statement of the trust account activity in December 2011 when he sent his billing statements to the creditors who requested notice.

The final fee application will not be approved until the above-listed amounts are reconciled and explained. How much has the firm received and where is the itemization of the $84,000 referred to by Mr. Ginn?

### Fees for Preparation of Fee Applications

The tort claimants object to the $38,771.86 requested for preparation of the fee application. Mr. Ginn explained that his firm had to review the fee applications filed by all of the professionals in the case to make sure they were reasonable. In contrast to the statement made in the final fee application indicating that the amount sought is for the period after September 1, 2009, Mr. Ginn explained at the hearing that the requested amount covers the preparation of all of his firm's fee applications, interim as well as final. However, a review of the interim fee applications indicates that Husch Blackwell previously requested more than $5,000 for billing and fee application preparation in its second interim application:

> Fee Application Preparation/Billing ($5,114.71 Requested): During the Application Period, Applicant undertook efforts to prepare and categorize the legal fees charged

>to Debtor as its bankruptcy counsel to ensure Debtor and its creditors could easily assess and analyze the work performed by Applicant during the course of Debtor's bankruptcy case.

Fil. No. 637 at 6.

The firm also requested compensation for fee application preparation in its first interim application. The amounts are not all itemized, but I could account for, at most, 3.5 hours, totaling less than $1,000.

Likewise, some of the entries on the final fee application lump work on the fee application in with other work performed that day, so it is difficult to break out how much time was actually spent on each task.

The bottom line is that the objecting parties appear to be correct in asserting that the $38,000 is for fee application preparation and review work only since September 1, 2009, which is a lot of money. More detail is requested.

### Costs

The written objection objected to the lack of detail about the claimed costs, but Mr. Ginn provided an exhibit with his affidavit showing the statement of expenses. The matter was not raised in oral argument.

### Conclusion

The applicant bears the burden of establishing an entitlement to compensation. In re Koerkenmeier, 344 B.R. 603, 609 (Bankr. W.D. Mo. 2006) (citing Chamberlain v. Kula (In re Kula), 213 B.R. 729, 736 (B.A.P. 8th Cir. 1997)). The applicant must demonstrate that the services for which compensation is sought were necessarily provided and that the amounts requested are reasonable. Id. (citing In re Tarkio College, 195 B.R. 424, 430 (Bankr. W.D. Mo. 1996) and In re Meyer, 185 B.R. 571, 574 (Bankr. W.D. Mo. 1995)). Bankruptcy courts utilize the lodestar approach, multiplying the number of hours reasonably expended in the case by a reasonable hourly rate. Id. (citing Novelly v. Palans (In re Apex Oil Co.), 960 F.2d 728, 732 (8th Cir. 1992); Kula, 213 B.R. at 736; In re Morrison, 231 B.R. 754, 758 (Bankr. W.D. Mo. 1999)). This approach reflects the novelty and complexity of the issues involved in the case, the special skill and experience of counsel, the quality of representation, and the results obtained. Apex Oil Co., 960 F.2d at 731-32.

In the case, the creditors probably had no idea until earlier this year, after they began reviewing the trust account activity statements, that administrative expenses were eating up most of the available funds. As Mr. Ginn stated, no one requested that information until late last year. Part of the problem stems from the absence of timely operating reports, about which no one raised any concerns until late 2011 or early 2012, when the U.S. Trustee filed a motion to compel, noting that the debtor had not filed operating reports or, apparently, paid quarterly fees, for more than a year. Those reports were not filed or provided to creditors until April 2012, so I would imagine the numbers did create quite a stir among the creditors.

I got the distinct impression from the arguments at the hearing that both sides, but especially the creditors, had unrealistic expectations based on what have turned out to be unreasonable

assumptions. Mr. Ginn explained that the mysterious $1 million anticipated by the creditors was a number picked from the air by counsel working on the insurance settlement, not subject to the debtor's control. The creditors seem to have clung to that $1 million hope, and are exceedingly disappointed now, without the missing million and without access to the funds that have been eaten up by administrative expenses. As Mr. Ginn pointed out, this was the first mass tort bankruptcy case in the district. It was a complicated bankruptcy, made more complex by the dozens of personal injury actions in other jurisdictions, plus the idiosyncracies of insurance litigation. The firm performed a massive amount of work on the case. It would be difficult to say the work they did was unnecessary, particularly since the unsecured creditors appear to have received distributions in excess of $6 million.

Until the amounts referred to above can be clarified to my satisfaction, the final application will be deferred.

DATED:    July 11, 2012

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
*Robert Ginn
Jerry Jensen
Christine Stetson
Ryan Osterholm

*Movant is responsible for giving notice of this order to other parties if required by rule or statute.